IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AXIS SURPLUS INSURANCE CO., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LAKE CDA DEVELOPMENT LLC, ) <br> and PANCO TERRACES, INC., ) <br> ) <br> Defendant. ) <br> _____) | Case No.  CV-07-505-E-BLW <br><br> **MEMORANDUM DECISION** <br> **AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Summary Judgment (Docket No. 18) and Defendant's Motion for Summary Judgment (Docket No. 20).  The Court heard oral argument on the motion on September 5, 2008 and now issues the following decision.

## BACKGROUND

AXIS Surplus Insurance ("AXIS") issued Lake CDA Development, LLC ("Lake CDA") a builder's risk insurance policy.  As suggested by the title, a builder's risk policy is designed to protect the insured's interest in structures it is in the process of building, subject to certain limitations and conditions.

In this case, Panco Terraces, Inc. ("Panco") built a seawall and a retaining

**Memorandum Decision and Order - 1**

wall under a contract with Lake CDA as part of the site preparation for a large condominium project. Subsequently, the retaining wall began to fail due to hydrostatic pressure from water below the surface of the ground. Panco repaired the retaining wall by re-designing it and installing a second retaining wall uphill from the original wall. The repairs cost approximately $200,000.00. The parties dispute whether the cost of repair is covered by the builder's risk insurance policy, and each party seeks summary judgment.

## ANALYSIS

### I.     Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

**Memorandum Decision and Order - 2**

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## II.   Standard For Interpreting Insurance Contracts

The parties dispute whether the "builder's risk" insurance policy covers loss

**Memorandum Decision and Order - 3**

claimed by Lake CDA. Generally, Idaho courts construe insurance contracts in accordance with their plain, unambiguous language; but where the insurance contract is ambiguous, it must be construed in a light most favorable to the insured and in a manner which provides full coverage for the indicated risks rather than narrowing its protection. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 754 (Idaho 2005). "In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities." *Id.* This determination is a question of law for the Court, and the Court must construe the insurance policy as a whole, not by isolated phrases. *Id.* Like other contracts, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations. *Id.*

"The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred." *Clark v. Prudential Property and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003). However, standardized contract language must necessarily be somewhat general, in anticipation of varying circumstances of the facts. *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984). "[W]here the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *Cascade*, 115 P.3d at 754.

**Memorandum Decision and Order - 4**

(Internal citation and quotation omitted).

## III. Policy Coverage

The parties assert several arguments, referencing several portions of the policy, in support of their contentions that the policy did or did not cover the loss. As discussed below, the Court has determined that Plaintiff is entitled to summary judgment based on Defendant's failure to comply with the "Duties in the Event of Loss" section of the policy. However, the Court will go on to briefly address the other arguments raised by the parties, so that all issues raised by the parties can be presented to Circuit Court, should this case be appealed.

### A. Duties in the Event of Loss

The "Duties in the Event of Loss" section of the policy states in relevant part as follows:

> C. Duties In The Event Of Loss
>
> You must see that the following are done in the event of loss or damage to Covered Property:
>
> * * *
>
> 2. Give us prompt notice of the loss or damage. Include a description of the property involved.
>
> 3. As soon as possible, give us a description of how, when and where the loss or damage occurred.
>
> 4.   * * * Also, if feasible, set the damaged property aside

**Memorandum Decision and Order - 5**

>> and in the best possible order for examination.
>
> * * *
>
> 6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(Docket No. 18, Ex. D, p. 29).

Lake CDA does not dispute that it discovered that the retaining wall was failing on February 15, 2006. Lake CDA likewise does not dispute that it did not notify AXIS of the failure until almost a full year later on February 5, 2007. Moreover, before reporting the loss to AXIS, Lake CDA tore down the damaged portion of the original retaining wall and installed a new one.

Under Idaho law, "substantial performance by the insured is all that is required to satisfy these conditions and valid excuses from the insured will be considered in finding substantial compliance." *State of Idaho v. Bunker Hill Co., 647 F.Supp. 1064, 1075 (D. Idaho 1986)* (citing *Viani v. Aetna Insurance Co.*, 501 P.2d 706 (1972)). Prejudice to the insurer is not material. *Id.*

The policy in this case unambiguously requires prompt notice of loss or damage and a description of the property involved. Although "prompt notice" is a somewhat relative term without specific deadlines, it clearly requires notice be

**Memorandum Decision and Order - 6**

given much earlier than almost a year after the retaining wall failed. Any finding to the contrary would be unreasonable, particularly where the builder tore down the damaged portion of the retaining wall and installed a new one before notice was given. Accordingly, AXIS is entitled to summary judgment.

**B.    Flood Endorsement**

The parties agree that the loss is not covered under the general water exclusion of the policy because the water exclusion bars coverage for loss caused directly or indirectly by water. However, the policy also contains an endorsement – the Flood Endorsement – re-granting coverage for loss caused by water for certain types of property. The parties dispute whether the loss is covered by the Flood Endorsement, which states in relevant part as follows:

> 1.  This policy covers loss or damage to the insured property as a result of flood.
>
> 2.  For the purpose of this insurance, Flood shall be defined as:
>
> \* \* \*
>
> E.  Water under the ground surface pressing on or flowing or seeping through:
>
> (a) Foundations, walls, floors or paved surfaces;
>
> \* \* \*
>
> 6.  This endorsement does not insure against loss or damage to retaining walls, seawalls, bulkheads, wharves, piers, bridges,

**Memorandum Decision and Order - 7**

>>docks or other structures located on or partially over water, or personal property in the open.

(Docket No. 18, Ex. D, pp. 40-41). The parties dispute the application of subsection 6 of the Flood Endorsement.

The relevant inquiry is whether the subject retaining wall is covered by the Flood Endorsement. Axis contends that it is not covered because subsection 6 of the Flood Endorsement specifically states that it does not insure against loss or damage to retaining walls. Lake CDA contends that it is covered because subsection 6 only excludes retaining walls located on or partially over water. It is undisputed that the retaining wall was not located on or partially over water.

As explained above, "[i]n construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities." *Cascade Auto Glass, Inc.*, 115 P.3d at 754. In looking at the plain meaning of the policy in this case, the Court finds that subsection 6 is ambiguous. On the one hand, subsection 6 can be read as a single sentence containing a list of eight types of property, each separated by a comma, that are not covered by the Flood Endorsement. The first six items are one-word or two-word nouns, including "retaining walls." The seventh item is "docks," followed, without a comma, by the phrase "or other structures located on or partially over water." The final item is "personal property in the open." It is reasonable to interpret the "or other

**Memorandum Decision and Order - 8**

structures located on or partially over water" phrase as modifying only the term "docks" immediately preceding it because that entire phrase, including the word "docks," is offset by commas.  In fact, this appears to be the proper reading of the sentence under general rules of grammar.  Under this interpretation, the loss in this case would not be covered by the policy.

On the other hand, it is reasonable to interpret the "or other structures located on or partially over water" phrase as modifying all seven terms preceding it because it follows a serial list of items, including "retaining walls."  Moreover, although such a reading may not comport with proper rules of grammar, the Court was unable to find any precedent suggesting that proper grammar alone makes a sentence or contract unambiguous.  Thus, under this interpretation of the phrase the loss in this case would be covered by the policy.

As explained above, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations.  *Id.*  In this case, the contract is ambiguous because there are at least two reasonable interpretations of subsection 6 of the Flood Endorsement.  Accordingly, neither party is entitled to summary judgment based on the Flood Endorsement clause.

    **C.**    **Error, omission or deficiency in design or specifications exclusion.**

AXIS also contends that the loss is not covered because of a faulty design.

**Memorandum Decision and Order - 9**

AXIS references the following exclusion in support of its argument:

> B. EXCLUSIONS
>
> * * *
>
> 2. We will not pay for a "loss" caused by or resulting from any of the following:
>
> * * *
>
> f. Error, omission or deficiency in design or specifications. But we will pay for direct "loss" caused by resulting fire or explosion.

(Docket No. 18, Ex. D, pp. 36-37).

AXIS suggests that the retaining wall did not have sufficient drain rock causing excess build up in water pressure, i.e., hydrostatic pressure. AXIS contends that the absence of drain rock up to the soil surface on the backside of the wall was a result of a bad construction design. Axis references John Huettl, the project manager for the construction of The Terraces, in support of their argument. (Exhibit I, Huettl Depo., p.34). Axis therefore contends that the policy exclusion for deficiency in design applies in this case.

Lake CDA counters with its own expert who testifies that the design of the original retaining wall was adequate for the soil pressures anticipated and the wall was designed with a drainage swale to intercept surface water from runoff and snowmelt. (Budinger Affidavit, Ex. A, Addendum #9, p. 4). Lake CDA's expert

**Memorandum Decision and Order - 10**

asserts that the original design of the retaining wall took into account both surface runoff water and underground water pressure, and that additional drain rock was not needed. (Budinger Affidavit, Ex. A, Addendum #9, p. 3).

The dueling experts on this issue create a genuine issue of material fact, which would be better left to the fact finder. Accordingly, neither party is entitled to summary judgment based on the faulty design exclusion.

### D. Covered Property

Axis next contends that there is no coverage for the loss because the retaining wall was not "covered property" at the time the loss occurred. The policy states in relevant part as follows:

> A. COVERAGE
>
> We will pay for direct physical "loss" to Covered Property caused by or resulting from any of the Covered Causes of Loss.
>
> 1. COVERED PROPERTY
>
> Covered Property, as used in this coverage form, means your property or the property of others for which you are legally liable and the value of which has been included in the Limits of Insurance, consisting of:
>
> c. Buildings or structures (including foundations, underground flues, pipes or drains) while under construction, erection, or fabrication at the project site;

**Memorandum Decision and Order - 11**

\* \* \*

 3. WHEN COVERAGE APPLIES

  a. Coverage begins when the Covered Property is at your risk during the policy period while:

   I. At the project site awaiting, during and after construction, erection or fabrication;

\* \* \*

  b. Coverage Ends:

   I. For each building or structure when one of the following first occurs:

    (a) Your interest ceases;

    (b) The owner or purchaser accepts the property; or

    (c) When the property is occupied in whole or part, put to its intended use, or leased or rented to others.

   ii. For the entire project when one of the following first occurs:

\* \* \*

    (b) 90 days after the construction is complete.

(Docket No. 18, Ex. D, pp. 32-33).

  Axis contends that the retaining wall was completed on November 28, 2005, and that the loss occurred on February 15, 2006 when the contractor noticed that it

**Memorandum Decision and Order - 12**

was leaning away from the hillside. Axis therefore contends that the policy had lapsed with respect to the retaining wall because it was no longer "under construction." AXIS argues that coverage had ended because the retaining wall had been put to its intended use as stated in subsection A(3)(b)(i)(c) of the policy.

Lake CDA does not dispute the completion or loss dates. It does, however, dispute the suggestion that coverage on the retaining wall ended once it was complete. Lake CDA asserts that the policy was designed to protect the entire project as it was being built.

Because subsection A(3)(b)(i)(c) references the "property" as opposed to a structure or some other specific component of the entire project, it is unclear whether the "coverage ends" section of the policy applies to a structure, such as the retaining wall in this case, or the entire condominium property. This creates an ambiguity in the policy that would be better left to a jury. Accordingly, neither party is entitled to summary judgment based on the "covered property" argument.

### E.    Rain, Snow Sleet or Ice

Lake CDA contends that it is entitled to summary judgment because the policy states that AXIS will pay for loss caused by rain, snow, sleet or ice. The policy states in relevant part as follows:

>    B.    EXCLUSIONS

**Memorandum Decision and Order - 13**

> 2. We will not pay for a "loss" caused by or resulting from any of the following:
>
> * * *
>
> (g) Rain, snow, sleet or ice, whether driven by wind or not. But we will pay for "loss":
>
> (i) Caused by collapse of the building or structure resulting directly from the weight of rain, snow, sleet or ice;

(Docket No. 18, Ex. D, pp. 36-37).

The exclusion for loss caused by rain, snow, sleet or ice contains an exception for collapse. However, AXIS does not contend that the exclusion applies in the first place. Thus, it is inappropriate to apply the exception to the exclusion. Moreover, although there is testimony that rain, snow and ice may have contributed to the problems with the retaining wall, there is no evidence that it "collapsed." Thus, the exception would not apply even if AXIS asserted the exclusion. Summary judgment is therefore inappropriate based on the rain, snow, sleet or ice clause of the policy.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 18) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary

**Memorandum Decision and Order - 14**

Judgment (Docket No. 20) shall be, and the same is hereby, DENIED.

The Court will enter a separate Judgment as required by Federal Rule of Civil Procedure 58.



DATED:  **September 10, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 15**